# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK ALLEN WILSON, | 1:05-cv-00560-OWW-SMS (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENIAL OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| WOODFORD, et. al., | |
| Defendants. | (Docs. 51 & 67) |

_____/

**Findings and Recommendation on Motions for Summary Judgment**

**I.     Procedural History**

     Plaintiff, Jack Allen Wilson, ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983 on claims which arose during his confinement at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California.  Plaintiff filed this action on  April 26, 2005.  (Doc. 1.)  On February 24, 2006, the Court issued an order finding that Plaintiff's complaint states a cognizable claim for relief under section 1983 for violation of the Eighth Amendment stemming from the care and treatment of Plaintiff's diabetes, but does not contain a cognizable claim for relief under the Americans with Disabilities Act or the Rehabilitation Act.  (Doc. 9.)  The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on his Eighth Amendment and state law claims.  (Id.)  On March 16, 2006, Plaintiff notified the Court that he wishes to proceed only with his cognizable claims.  (Doc. 10.)  Based on Plaintiff's response, this

Court issued an Findings and Recommendation that the case proceed only on Plaintiff's claims against Defendants Woodford, Doe #1, Corcoran, Wu, Kyle, Divine, Brooks, Suryadevara, and Martinez for violating the Eighth Amendment and on claims under California law -- dismissing all claims by Plaintiff for violations of his rights under both the Americans with Disabilities Act and the Rehabilitation Act. (Doc. 11.) Plaintiff did not object to the Findings and Recommendation. On May 25, 2006, the District Judge issued an Order Adopting the Findings and Recommendations. (Doc. 16.)

On April 20, 2007, Plaintiff filed a motion for summary judgment. (Doc. 51.) On February 1, 2008, Defendants filed an opposition and a cross-motion for summary judgment. (Doc. 67.) Plaintiff did not file an opposition to Defendants' cross-motion and neither side filed a reply.[1]

## II.    Summary of Plaintiff's Claims

This case is proceeding on Plaintiff's cognizable claims against his medical providers at SATF (Dr. Kyle, Dr. Suryadevara, and Dr. Wu) for violating his rights under the Eighth Amendment by failing to provide constitutionally adequate care for his condition of diabetes mellitus, which resulted in a deterioration of Plaintiff's health, and against Defendants holding supervisory positions (Woodford, Doe #1, Corcoran, Dr. Kyle, Divine, Brooks, Dr. Suryadevara, and Martinez) for promulgating and/or implementing the policies and practices that led to the unavailability of proper care and treatment for Plaintiff's condition. (Docs. 1, 11, 16.)[2]

---

[1] Plaintiff was provided with notice of the requirements for opposing and replying to a motion for summary judgment by the Court in an order filed on April 28, 2006. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 14.) Further, on May 5, 2008, the Court notified Plaintiff of the necessity to either file an opposition or a declaration of non-opposition to Defendants' Motion for Summary Judgment. (Doc. 70.) Plaintiff failed to file either requested document. Thus, the Court infers that Plaintiff's moving papers present all of Plaintiff's evidence and arguments that he wishes the Court to consider on both motions considered herein.

[2] Plaintiff's Motion for Summary Judgment indicates that, along with others, he is moving for summary judgment on claims that he was denied "reasonable accommodations, [and] . . . benefits of programs, services, or activities of the CDC institutions, and conduct of discriminatory animus and/or deliberate indifference toward plaintiff under Title II of the Americans with Disabilities Act (ADA) and/or Rehabilitation Act (RA)." (Doc. 51, pg. 1.) Plaintiff also asserts argument for violation of "his constitutional right to equal protection." (Doc. 51, pp. 12-13.) Further, throughout his moving papers, Plaintiff uses terminology which might be inferred to implicate other constitutional claims such as "retaliation," "conspiracy," "safety," "failure to protect," and the like. Plaintiff may not now expand the scope of this litigation via deposition testimony, or his Motion for Summary Judgment. See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). The Court screened Plaintiff's complaint and

1    Plaintiff claims that, during his tenure at SATF (2003-2005), he repeatedly requested, but

2    was denied, therapeutic diabetic diets and menus, dietary education, and finger-sticks up to eight

3    times a day with documentation on CDC-7247 forms to monitor his blood-sugar/glucose levels.

4    Plaintiff claims that, as a result, his blood sugar/glucose levels were allowed to increase above

5    safe limits so as to cause irreversible harm.  Plaintiff also raises claims for medical malpractice

6    and intentional infliction of emotional distress under California tort law.

7    **III.    Summary Judgment Standards**

8            Summary judgment is appropriate when it is demonstrated that there exists no genuine

9    issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

10   Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

11               [A]lways bears the initial responsibility of informing the district
             court of the basis for its motion, and identifying those portions of
12           "the pleadings, depositions, answers to interrogatories, and
             admissions on file, together with the affidavits, if any," which it
13           believes demonstrate the absence of a genuine issue of material
             fact.
14
15   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It is the moving party's burden to establish

16   that there exists no genuine issue of material fact and that the moving party is entitled to

17   judgment as a matter of law.  British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir.

     1978).
18
19           "When the moving party does not have the burden of proof on the issue, he need show

20   only that the opponent cannot sustain his burden at trial."  Calderone v. United States, 799 F.2d

21   254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal

22   Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)).   "But where the moving

23   party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense

24   - his showing must be sufficient for the court to hold that no reasonable trier of fact could find

25   other than for the moving party."  Id.  Thus, as to Plaintiff's motion for summary judgment,

26   Plaintiff must demonstrate there is no triable issue as to the cognizable matters alleged in his

27

28   found only the claims under the Eighth Amendment and state law claims cognizable.  (Docs. 11, 16.)  Thus, the
     Court will only address Plaintiff's claims under the Eighth Amendment and California State Tort laws.

                                                    3

complaint.  Id.  This requires Plaintiff to establish beyond controversy every essential element of his Eighth Amendment claim.  Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).  Plaintiff's evidence is judged by the same standard of proof applicable at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

As to Defendant's Motion for Summary Judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Celotex Corp., 477 U.S. at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

4

Since he has the burden of persuasion at trial, as the moving party in his motion, Plaintiff must show that there is no triable issue as to the matters alleged in his own pleadings. Calderone 799 F.2d at 259. Since they do not have the burden of persuasion at trial, Defendants may carry their burden of production on summary judgment either by disproving an essential element of Plaintiff's claims, or by showing that Plaintiff lacks sufficient evidence of an essential element to carry his burden of persuasion at trial. See Celotex Corp., 477 U.S. 317 and Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc. 210 F.3d 1099, 1102 (9th Cir. 2000).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be

5

considered on its own merits." <u>Fair Hous. Council of Riverside County, Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).

## IV.  Motions for Summary Judgment[3]

### A. Eighth Amendment Deliberate Indifference to Serious Medical Needs

Plaintiff claims that Defendants were deliberately indifferent to his serious medical need (diabetes melitus) by failing to provide him with diabetic diets and menus, dietary education, and multiple daily finger-sticks so as to cause his blood-sugar/glucose levels to increase above safe limits which caused him irreparable harm.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted) quoting <u>Estelle</u>, 429 U.S. at 104.). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id</u>.

---

[3] A party moving for summary judgment is required to submit a Statement of Undisputed Facts which "enumerate[s] discretely each of the specific material facts relied upon in support of the motion and cite[s] the particular portions of any pleading, affidavit, deposition interrogatory answer, admission or other document relied upon to establish that fact." Local Rule 56-260(a). Both sides submitted a Statement of Undisputed Facts to support their respective motions. Defendants also filed an opposition to Plaintiff's Undisputed Facts. Plaintiff did not file any response to Defendants' Statement of Undisputed Facts. Despite this procedural deficiency, which renders the motions more burdensome than they ought to be, the Court has opted to consider Plaintiff's verified complaint, his declaration, and his verified brief – which may all be treated as declarations. <u>Moran v. Selig</u>, 447 F.3d 948, 759-60 (9th Cir. 2006); <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004); <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

Further, the Court reviewed Plaintiff's complaint, Plaintiff's motion, Defendants' Cross-motion for Summary Judgment, and Defendants' Opposition. The Court declines to exhaustively list every argument forwarded, every fact recited, and every piece of evidence submitted by the parties. Omission in this findings and recommendation of reference to various arguments, facts, or evidence should not be interpreted by the parties as an indication that the Court overlooked that argument, fact, or piece of evidence.

(citing McGuckin, 974 F.2d at 1060). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n 'inadvertent [or negligent] failure to provide adequate medical care' alone" is insufficient to state a claim, and an isolated incident when compared to overall treatment "'ordinarily militates against a finding of deliberate indifference.'" Jett, 439 F.3d at 1096 (quoting McGuckin, 974 F.2d at 1060 (internal quotations and citations omitted)).

Further, Plaintiff proceeds against a number of Defendants who hold supervising positions ("the Supervising Defendants") to wit: Woodford is the CDC Director; Corcoran is the Secretary of the Youth and Adult Corrections Agency; Divine is a SRN II, Correctional Health Services Administrator II; Brooks is a Dietician; Dr. Suryadevara and Dr. Kyle are Chief Medical Officers; and Martinez is a CHSA II, Correctional Health Services Administrator II. Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervising position, the causal link between the defendant and the claimed constitutional violation must be specifically established. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Plaintiff must demonstrate that each of the Supervising Defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A constitutional rights violation is a prerequisite to any such claim(s) against a supervising defendant. "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff cites "Jackson v. Fauver 334 F.Supp.2d at 701 (D.N.J. 2004)" as delineating three criteria by which a policymaker defendant may be found to have been deliberately indifferent to an inmate's need(s). However, page 701 of that decision contains the headnotes to the decision, rather than any portion of the decision itself. Headnotes of a decision are not binding authority on any court. Further, the only portion of Jackson that appears applicable to the case at bar is a segment discussing an inmate's diabetes. However, in Jackson, the inmate had an expert witness who opined that the inmate's blood sugar/glucose levels were out of control and that the inmate developed resultant heart and kidney damage. That is starkly contrasted by the case at bar since Plaintiff has not submitted a medical expert declaration and has presented no evidence to show that he is personally qualified to render medical opinions. Fed. R. Evid. 701, 702. Further, Plaintiff does not even submit any medical records that explicitly delineate any conditions or injuries that he has sustained as a result of his allegedly out-of- control blood sugar/glucose levels.

Plaintiff also cites "Richard v. Goord, 347 F.3d 431 C.A.2 (N.Y. 2003)" as delineating five criteria by which supervisory liability can attach. The case name is actually "Richardson v. Goord." The Richardson case is distinguishable from the case at bar as it does not address issues of supervisory liability for policy promulgation and implementation; rather, it addresses claims of one physician altering another physician's prescription for an inmate, and supervisory liability of

the state correctional department commissioner ("Goord"), based on a letter from the plaintiff complaining about the medical care he received. The only aspects of the Richardson case that withstood summary judgment were possible questions of fact as to the contents of the inmate's letter, when it was written, and whether it could be located. It was held that this evidence alone (as to time and content of knowledge by the commissioner) might have created an issue of fact as to whether Goord was deliberately indifferent to Richardson's medical needs and might factor into exhaustion of administrative remedies in that district. (Id. at pg. 435.) The Richardson case is distinguishable from the case at bar as exhaustion of administrative remedies, and timing of knowledge by prison personnel, is not an issue before the Court.

Further, while Jackson provides the requirements for supervisory liability followed by a district court in New Jersey, and Richardson provides the requirements for supervisory liability in the Second Circuit, this Court is bound by the clear edicts of the Ninth Circuit in Hansen, 885 F.2d at 646 (internal citations omitted); Taylor, 880 F.2d at 1045 (that a plaintiff must demonstrate that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation'") and Hydrick, 500 F.3d at 988 (quoting Johnson, 588 F.2d at 743) ("A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'")

Plaintiff also alleges that Woodford, Divine, Martinez, Dr. Kyle, and Dr. Suryadevara violated his constitutional rights via the processing and reviewing of his inmate appeals related to the failure of SATF to provide diabetic diets, menus, and/or self-avoidance education, and the insufficient number of daily finger-sticks to check and document his blood sugar/glucose levels for adequate control of his diabetes. (Doc. 1, pp. 16, 18, Doc. 51, pp. 2, 3, 11.)

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)

1  (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)).  Further, reviewing a prisoner's

2  administrative appeal cannot serve as the basis for liability under a § 1983 action.  Buckley, 997

3  F.2d at 495.  The argument that anyone who knows about a violation of the Constitution, and

4  fails to cure it, has violated the Constitution himself is not correct.  "Only persons who cause or

5  participate in the violations are responsible.  Ruling against a prisoner on an administrative

6  complaint does not cause or contribute to the violation."  George v. Smith, 507 F.3d 605, 609-10

7  (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride,

8  178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).  Thus,

9  since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and

10  is unable to submit evidence to establish the elements of a constitutional violation purely for the

11  processing and/or reviewing of his inmate appeals.

12       This Court has found that at least one Appellate Circuit has held that "[o]nce a [non-

13  medical] prison grievance examiner becomes aware of potential mistreatment, the Eighth

14  Amendment does not require him or her to do more than 'review [the prisoner's] complaints and

15  verif[y] with the medical officials that [the prisoner] was receiving treatment."  Greeno, 414 F.3d

16  at 656 citing Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004) (non-physician defendants

17  cannot "be considered deliberately indifferent simply because they failed to respond directly to

18  the medical complaints of a prisoner who was already being treated by the prison doctor" and if

19  "a prisoner is under the care of medical experts . . . a non-medical prison official will generally

20  be justified in believing that the prisoner is in capable hands.")  This Court concurs with the

21  analysis in Greeno and Spruill.  Thus, if Plaintiff meets his burden of establishing a triable issue

22  of fact against any of the medical defendants (Dr. Kyle and/or Dr. Suryadevara) under the Eighth

23  Amendment for deliberate indifference to his serious medical needs (as will be discussed in great

24  detail herein below) he will also have met his burden of establishing a triable issue of fact against

25  those medical defendants who reviewed and ruled against him on his inmate appeals on medical

26  issues.  However, Plaintiff cannot establish a triable issue of fact against any of the non-medical

27  defendants (Woodford, Martinez, and Divine) who reviewed and ruled against him on his inmate

28  appeals on medical issues.

**1.____Plaintiff's Motion for Summary Judgment**

    **a.  Diabetic Diet**

  Plaintiff argues that he is entitled to judgment as a matter of law on his claim that Defendants acted with deliberate indifference to his serious medical needs (diabetes) by denying daily therapeutic diabetic diets and menus. (Doc. 51, pg. 7.)

    **(1)  The Supervising Defendants (Woodford, Corcoran, Brooks, Dr. Kyle, Dr. Suryadevara, Divine, and Martinez)**

  Since Plaintiff has the burden of persuasion at trial, as the moving party in his motion, he must prove that each of the Supervising Defendants promulgated or implemented a policy that Plaintiff, as a diabetic inmate, be served a medically inappropriate diet so as to rise to the level of deliberate indifference to his serious medical needs (diabetes). This presupposes an essential element that the diet provided to Plaintiff was inappropriate for his diabetic needs.

  Plaintiff contends that he has a right to therapeutic diabetic diets and weekly menus to help control his blood sugar/glucose levels, and that CDCR's policies require that "each facility shall provide therapeutic medical diets that are prescribed by a physician or dentist." (Id. at 7.) Plaintiff submits evidence that, during his time at SATF (2003-2005), he did not receive any therapeutic diabetic diets, any daily or weekly diabetic menus, or diabetic education as to which of the foods served he could safely eat. (Id. at 2.) Plaintiff contends that all inmates at SATF are served the same food, and that the menu does not provide an individualized meal plan for diabetics to be able to control their carbohydrate intake in relation to their activity and insulin/medication dosage. (Id. at 7.)

  Plaintiff's contention that the diet he received was inappropriate for him is premised on excerpts from a book published by the American Diabetes Association ("the ADA"). (Id. at pg. 7 and Ex. I.) However, while the excerpts submitted by Plaintiff mention diet and intake of carbohydrates and/or sugars, they do not show that the "Heart Healthy" diet with self-avoidance education would pose a risk of serious harm to a diabetic inmate. Plaintiff's evidence shows that it was SATF's policy and implemented procedure to serve the "Heart Healthy" diet to all inmates with self-avoidance education for diabetics. (Doc. 51-2, pp. 203-209.) Plaintiff's evidence does

not show that he was forced to consume an excessive amount of carbohydrates and/or sugars for his diabetic condition. Plaintiff fails to submit any evidence to show how SATF's policy and procedure which required serving the "Heart Healthy" diet with self-avoidance education amounts to ". . . a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646 (internal citations omitted); Taylor, 880 F.2d at 1045.

Thus, Plaintiff has not met his burden, and is not entitled to summary judgment against any of the Supervising Defendants for promulgating and/or implementing the policy to serve the "Heart Healthy" diet with self-avoidance education to diabetic inmates, as this policy and/or procedure did not, in and of itself, cause a violation of his constitutional rights. Even if Plaintiff had shown that the policy of serving the "Heart Healthy" diet with self-avoidance education posed a risk to his diabetic condition, he has failed to show that any of the Supervising Defendants acted with deliberate indifference towards him by promulgating and/or implementing that policy. Plaintiff has shown that he disagrees with prison officials over the diet that should be served to diabetic inmates. However, mere differences of opinion between a prisoner and prison staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir.1981).

There is no evidence from which a trier of fact could conclude that: (1) the "Heart Healthy" diet with self-avoidance education posed a substantial risk of serious harm to Plaintiff; (2) any of the Supervising Defendants had knowledge of and disregarded a substantial risk of serious harm that the "Heart Healthy" diet with self-avoidance education posed to Plaintiff; or (3) that there was a policy or practice, attributable to any of the Supervising Defendant(s), of not educating diabetic inmates, or of serving foods other than under the "Heart Healthy" diet. Thus, Plaintiff is not entitled to summary judgment regarding his allegations that the Supervising Defendants were deliberately indifferent to his serious medical needs via promulgating and/or implementing the policy of serving the "Heart Healthy" diet with self-avoidance education to diabetic inmates. The opposition to Plaintiff's motion need not be addressed on this point since

1    Plaintiff has not met his burden to be entitled to summary judgment.

2                    **(2)    Dr. Wu, Dr. Kyle**

3          To be entitled to summary judgment, Plaintiff must establish that each defendant from

4    whom he received medical care and/or treatment (Dr. Wu and Dr. Kyle) failed to provide him a

5    diabetic diet and/or self-avoidance education out of deliberate indifference to exposing Plaintiff

6    to a substantial risk of serious harm.

7          As to Dr. Wu, Plaintiff submitted his declaration wherein he states that Dr. Wu was

8    Plaintiff's primary physician from June 26, 2003 through March 23, 2004.  (Doc. 51, pg. 3, ¶ 4.)

9    Plaintiff declares that he requested a diabetic diet from Dr. Wu, but that Dr. Wu told him that he

10   could not prescribe, and there were not policies to permit, diabetic diets at SATF.  (Id. at ¶ 3.)

11   Plaintiff further declares that Dr. Wu did not "allow" Plaintiff any diabetic education with a

12   dietician to help monitor and control Plaintiff's diabetes.  (Id. at ¶ 4.)  Plaintiff states that these

13   inactions by Dr. Wu "allowed" Plaintiff's "blood sugar levels to be continuously too high and

14   uncontrolled that caused Plaintiff harm."  (Id.)  In support of this argument, Plaintiff attaches and

15   directs the Court to Exhibit F1-22.  These exhibit pages are medical charts with various

16   handwritten notations on them that appear to track Plaintiff's blood sugar/glucose levels from

17   August of 2003 through April of 2005.  However, the Court is unable to distill how Plaintiff

18   intended these exhibit pages to demonstrate that Dr. Wu allowed his blood sugar/glucose levels

19   to be continuously too high and uncontrolled so as to cause him harm.  Further, the Court is

20   unable to ascertain, and Plaintiff fails to provide any information to explain, the meaning of the

21   notation "ref," which variously appears on these exhibit pages.  The myriad of possible

22   implications for "ref" are vast and varied (i.e. results within certain reference parameters,

23   Plaintiff refused to have his blood drawn, or another meaning altogether).  It is noted that, on

24   certain occasions, Plaintiff was apparently administered varying doses of insulin.  However,

25   Plaintiff failed to submit any medical basis for the Court to ascertain what about the

26   administration of insulin, or lack thereof, might not have adequately "controlled" his blood

27   sugar/glucose levels.  Further, Plaintiff is not a medical expert and is not qualified to render

28   medical opinions as to whether his blood sugar/glucose level readings imply that his diabetes was

                                                       13

adequately controlled and/or whether he was given the appropriate amount of insulin to control his blood sugar/glucose levels. Fed. R. Evid. 701, 702.

Dr. Wu and Dr. Kyle are the only defendants who examined and treated Plaintiff for his medical condition. Plaintiff contends that, in an exam with Dr. Wu in July of 2003, he requested to be provided with a therapeutic medical (diabetic) diet and/or a diabetic menu, but that Dr. Wu indicated "no such diets are provided [at SATF]." (Doc. 1, pp. 15-16.) Plaintiff also states that in February of 2004, Dr. Kyle saw Plaintiff and advised that therapeutic diets and special diabetic menus were not available, but that Dr. Kyle would refer Plaintiff to be seen by SATF's Dietician. (Id. at pg. 17.) Plaintiff further declares that he did not receive any dietary education for his diabetes during the period of 2003 through 2005. (Doc. 51, pg. 2, ¶ 4.) However, Plaintiff has also submitted evidence that he was "ducited" to see the dietician, but that the appointment was cancelled by SATF's Medical Department, and that Dr. Kyle ordered Plaintiff to be seen by the dietician on February 22, 2004, and he was seen by Brooks on October 28, 2004. (Doc. 1, pg. 19.) Plaintiff fails to provide any information as to the date of the cancelled "ducited" appointment with the dietician.

Plaintiff's evidence that Dr. Wu told him that therapeutic medical (diabetic) diets and/or diabetic menus were not provided at SATF does not amount to deliberate indifference as he has not shown that the "Heart Healthy" diet with self-avoidance education was inappropriate for diabetic inmates. Further, not only does Plaintiff not submit evidence to show whether Dr. Wu ordered he be seen by the dietician for self-avoidance education, he also fails to submit any evidence to show that Dr. Wu failed to order the same out of deliberate indifference for Plaintiff's diabetic condition. Thus, Plaintiff fails to establish that Dr. Wu was aware that Plaintiff needed dietary education in order to avoid a substantial risk of serious harm from his diabetes, and drew the inference that Plaintiff would not receive dietary education so as to expose him to a substantial risk of serious harm. Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837).

Likewise, Plaintiff's evidence that Dr. Kyle told him that therapeutic medical (diabetic) diets and/or diabetic menus were not provided at SATF does not amount to deliberate

indifference as he has not shown that the "Heart Healthy" diet with self-avoidance education was inappropriate for diabetic inmates. Further, Plaintiff's evidence shows that Dr. Kyle ordered Plaintiff to be seen by the dietician. This evidence conflicts with Plaintiff's allegations that Dr. Kyle was deliberately indifferent to Plaintiff's diabetic dietary needs. The fact that Dr. Kyle ordered Plaintiff to be seen by the dietician on February 22, 2004, and that Plaintiff was not seen by Brooks until October 28, 2004, without more, does not establish that Dr. Kyle was deliberately indifferent to Plaintiff's diabetic condition. The delay between Dr. Kyle's order and Plaintiff's meeting with Brooks might rise to the level of negligence on the part of someone responsible for scheduling such appointments at SATF, but the delay alone does not establish deliberate indifference on the part of either Dr. Kyle, or Brooks. Mere "indifference," "negligence," or "medical malpractice" will not support a claim of deliberate indifference under the Eighth Amendment. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Thus, Plaintiff is not entitled to summary judgment against Dr. Wu and Dr. Kyle as he fails to demonstrate the absence of triable issues as to his claims that Dr. Wu and Dr. Kyle violated his rights under the Eighth Amendment based on their personal participation in his medical care and treatment. The opposition to Plaintiff's motion need not be addressed on this point since Plaintiff has not met his burden to be entitled to summary judgment.

### (3)    Brooks

Plaintiff submits evidence against Brooks that Plaintiff did not receive any dietary education for his diabetes during the period of 2003 through 2005 (Doc. 51, pg. 2, ¶ 4), that he was "ducted" to see the dietician, but that the appointment was cancelled by SATF's Medical Department (Doc. 1, pg. 19.), that Dr. Kyle ordered Plaintiff to be seen by the dietician on February 22, 2004 (Id.), and he was seen by Brooks on October 28, 2004 (Id.). Plaintiff fails to provide any information as to the date of the cancelled "ducted" appointment with the dietician. Further, Plaintiff admits that he was seen by Brooks on October 28, 2004, but that she advised him she would not provide him with a therapeutic medical diet, could not provide him with a

15

diabetic menu, and told Plaintiff that the Health Care Services Division would not allow her to order any diabetic diets on special menus. (Id.)

Thus, Plaintiff's allegations against Brooks only charge her with a failure/inability to provide him with a diabetic diet and/or diabetic menus. As previously discussed herein, SATF's policy of serving the "Heart Healthy" diet with self-avoidance education to diabetics is not constitutionally deficient. Thus, the only way Plaintiff might be able to meet his burden of proof against Brooks would be if he were able to demonstrate that, out of deliberate indifference to his diabetic condition, she denied him education as to which foods served on the "Heart Healthy" diet he should increase, avoid, and/or limit his intake of as a diabetic. Plaintiff fails to establish that Brooks had knowledge of his diabetic condition and failed to give him any education as to which foods he should increase, avoid, and/or limit his intake of out of deliberate indifference to his diabetic condition. Brooks not giving him a therapeutic medical diet, or a diabetic menu because she was not allowed to order either shows that prison policies did not allow her to do so, not that she failed to do so out of deliberate indifference to Plaintiff's diabetes. Thus, Plaintiff fails to meet his burden of proof and is not entitled to summary judgment against Brooks as he has failed to establish the absence of a triable issue of fact as to Brooks being deliberately indifferent to his diabetic condition by failing to give him a diabetic diet and/or diabetic menus. The opposition to Plaintiff's motion need not be addressed on this point since Plaintiff has not met his burden to be entitled to summary judgment.

**b. Daily Multiple Finger-sticks**

Plaintiff argues that he is entitled to summary judgment on his claim that Defendants acted with deliberate indifference to his serious medical needs (diabetes) by implementing a policy which failed to allow his blood sugar/glucose levels to be documented and tested via finger-sticks up to eight times each day. Plaintiff contends that he did not receive sufficient daily finger-sticks, and documentation thereof, to be able to adequately monitor and control his blood sugar/glucose levels. (Doc. 1, pp. 9, 11, 15, 20, 21, 25, Doc. 51, pp. 2-4, 9-12, and Exhibit F.)

/ / /

/ / /

**(1)    The Supervising Defendants (Woodford, Corcoran, Brooks, Dr. Kyle, Dr. Suryadevara, Divine, and Martinez)**

Once again, Plaintiff has the burden to prove that each of the Supervising Defendants promulgated or implemented a policy such that Plaintiff, as a diabetic inmate, was unable to obtain the number of blood sugar/glucose finger-sticks that were medically required so as to rise to the level of deliberate indifference to his serious medical needs.

In his declaration in support of his motion, Plaintiff states that he was "not allowed to test and document his blood sugar/glucose levels 4-8 times per day, before and after each meal, and/or on an 'as needed basis' which is the community standard of care and treatment for diabetic's to properly monitor and control their diabetes while [he] was in the defendants [sic] custody during the period of 2003-2005." (Doc. 51, pg. 2, ¶ 5.) In his complaint, Plaintiff alleges that Defendants failed to provide him "with medically necessary finger-sticks and insulin injections (as per needed) throughout the day to maintain blood sugar levels between 80 mg - 110 mg, but no higher than 126 mgs; . . . ." (Doc. 1, pg. 9.) Plaintiff further alleges that Defendants "approved, continued, or tacitly authorized a policy, policies, or custom(s) of not providing . . . fingersticks [sic] and insulin injections throughout the daily activities, . . . " "which resulted in a serious, potentially fatal, decline in Plaintiff's health. . . ." (Id. at pp. 9, 11.)

Plaintiff argues that it is settled and established that he has a right to control his blood sugar/glucose levels between 80 mg/dl and 110 mg/dl "and that defendants are deliberately indifferent when the course of treatment they chose to allow [sic] plaintiffs [sic] blood sugar levels to continuously be too high or too low was medically unacceptable under the circumstances." (Doc. 51, pg. 9.) Plaintiff refers the Court to his Exhibit F, which as previously discussed, provides neither proper nor sufficient basis for the Court to consider the information contained therein as evidence of what Plaintiff's blood sugar/glucose levels should have been, and/or that they were allowed to be continuously too high or too low. Plaintiff also cites Williams v. Vincent, 508 F.2d 541, 543-44 (2nd Cir. 1974) in support of this argument. However, his reliance on Williams is misplaced for any issues in this case other than as an example of deliberate indifference (prison medical staff chose to throw away inmate's severed

17

ear, rather than reattach it).

In his unverified Statement of Undisputed Facts, Plaintiff states that "Defendants [sic] policies, customs, practices and/or procedures denied plaintiff the necessary means to test his out- of- control blood sugar levels 4-8 times per day and documentation of those tests on CDC-7247 forms which is the community standard of care and treatment of plaintiffs [sic] diabetes." (Doc. 51, pg. 4, ¶ 11.) Plaintiff references his Exhibits E, F, and I in support of this statement. Exhibit E is a copy of the "Hearth Healthy"diet, F is a copy of the charting of his blood sugar/glucose levels previously discussed, and I is a copy of an excerpt from the previously discussed book published by the ADA. Exhibit F appears to show that Plaintiff's blood sugar/glucose levels were tested roughly twice a day, and the results were documented. However, none of these three exhibits show that Plaintiff's blood sugar/glucose levels were out of control, were not documented, or were not taken frequently enough to meet the community standard of care for diabetics.

Plaintiff's contention that he did not receive sufficient finger-sticks to adequately monitor and control his blood sugar/glucose levels also appear premised on excerpts from the book published by the ADA. (Doc. 51, pp. 9-11, and Exhibit I.) However, while the excerpts submitted by Plaintiff mention monitoring one's blood sugar/glucose levels via finger-sticks, they do not show any specific number of times per day that blood sugar/glucose levels must be checked. In fact, the book states "[y]our diabetes care provider can help you figure out when to check your blood glucose. . . . There are eight check times for you to choose from. . . ." (Doc. 51-3, pg. 259.) Thus, the evidence that Plaintiff submitted does not show that he required a certain number of daily finger-sticks to adequately monitor his blood sugar/glucose level. Rather, Plaintiff's own evidence indicates that a medical provider should determine when one's blood sugar/glucose levels should be checked -- not that Plaintiff required a specific number of finger-sticks per day. Plaintiff failed to submit any evidence by a medical provider to show that he did not receive a sufficient number of finger-sticks to monitor his blood sugar/glucose levels. Even if Plaintiff had shown that he should have received more numerous finger-sticks, he failed to present any evidence that any of the defendants intentionally restricted his access to blood

18

sugar/glucose monitoring out of deliberate indifference to Plaintiff's diabetic condition.

Plaintiff has shown that he disagrees with prison officials over the number of finger-sticks he should have received to monitor and control his diabetes. However, once again, mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1334.

Plaintiff is not entitled to summary judgment as he fails to establish the absence of a triable issue of fact so as to meet his burden of proving that any of the Supervising Defendants promulgated or implemented a policy that Plaintiff, as a diabetic inmate, would be unable to obtain the number of blood sugar/glucose finger-sticks that were medically required for his condition so as to rise to the level of deliberate indifference to his serious medical needs. The opposition to Plaintiff's motion need not be addressed on this point since Plaintiff has not met his burden to be entitled to summary judgment on this issue.

### (2)    Dr. Wu and Dr. Kyle

Once again, Plaintiff has the burden of proving that each of the defendants from whom he received medical care and/or treatment (Dr. Wu and Dr. Kyle) were deliberately indifferent to a substantial risk of serious harm by failing to order and/or provide Plaintiff with sufficient daily finger-sticks to appropriately monitor and control his blood sugar/glucose levels.

Plaintiff alleges in his complaint that, on July 3, 2003, he was seen by Dr. Wu and requested "multiple fingersticks [sic]" (and the diet and education previously addressed), but that Dr. Wu only responded to Plaintiff's inquiry regarding diets and menus. (Doc. 1, pg. 15.) On July 17, 2003, Plaintiff again saw Dr. Wu and requested a diabetic diet, weekly diabetic menus, and multiple daily finger-sticks with insulin injections, but "Dr. Wu told Plaintiff that SATF does did not provide such care or treatment for diabetics." (Id.) Plaintiff alleges that "no records were being kept to record Plaintiff's blood sugar levels." (Id.) Plaintiff alleges that Dr. Wu and Dr. Kyle "have continually denied Plaintiff multiple (5-6) fingersticks [sic] and insulin injections as needed daily to monitor and control his Type II diabetes . . . and maintain blood sugar levels within safe limits, instead, only allowed Plaintiff fingersticks [sic] and insulin injections twice

19

(a.m. & p.m.) per day, allowing his blood sugar levels to elevate above safe limits known to cause irreparable harm, even death which demonstrates deliberate indifference." (Id. at pg. 20.)

In his Statement of Undisputed Facts, Plaintiff indicates that on July 3, 2003, Dr. Wu stated that he would allow Plaintiff two finger-sticks per day, but that Plaintiff was not actually allowed two finger-sticks per day, and Plaintiff referred the Court to the second page of his Exhibit F. (Doc. 51, pg. 3.) However, since Plaintiff's Statement of Undisputed Facts is not verified, the assertions within it cannot be considered as evidence. Further, giving Plaintiff every leniency, the Court is unable to see how page two of Plaintiff's Exhibit F shows that he was not allowed two finger-sticks per day. In fact, it appears to the Court that this exhibit page actually shows that for the entire month of August in 2003, he received two finger-sticks per day, all but six days (on which he received one finger-stick). The only information that might be gleaned from this exhibit page is that Plaintiff did not receive more than two finger-sticks per day in August of 2003.

Also in his unverified Statement of Undisputed Facts, Plaintiff states that Dr. Wu was his primary physician from June 26, 2003 through March 23, 2004; that Dr. Wu never allowed him numerous finger-sticks (and diabetic diet, and/or diabetic education); and that "Dr. Wu's deliberate indifference purposefully allowed plaintiffs [sic] blood sugar levels to be continuously too high and uncontrolled that [sic] caused plaintiff harm.." (Id. at pg. 3, ¶ 4.) Plaintiff then refers the Court to pages one through twenty-two of his Exhibit F and notes that "safe blood sugar levels must be maintained between 80 mg/dl and 110 mg/dl." (Id.) However, Plaintiff is not a medical expert. Thus, he is limited to providing testimony that is rationally based on his own perceptions. Fed. R. Evid. 701, 702. Plaintiff fails to submit any medical expert testimony both as to the reasonable ranges for his blood sugar/glucose levels and as to the basis for his conclusion that his blood /glucose levels were uncontrolled. While Plaintiff's Exhibit F shows that his blood sugar/glucose levels were occasionally over 110 mg/dl, they were also occasionally under 80 mg/dl, and occasionally they were noted as "ref.", the latter of which the Court has no basis to define. The Court notes that page twenty-one of Plaintiff's Exhibit F contains only one entry, which states "refused," but Plaintiff provides no medical testimony or other explanation

for this entry. Further, Plaintiff's Exhibit F contradicts Plaintiff's allegation that "no records were being kept to record Plaintiff's blood sugar levels." (Doc. 1, pg. 15.) Plaintiff was in the custody of SATF from 2003 to 2005. (Doc. 51, pg. 6.) He was transferred into SATF custody on June 26, 2003, and saw Dr. Wu for the first time on July 3, 2003. (Doc. 51, pg. 2, ¶ 2 and Doc. 1, pg. 15.) Exhibit F shows that he began receiving blood sugar/glucose checks twice a day in August of 2003, which continued through April of 2005 (excluding June of 2004).

Plaintiff has shown that, at most, his blood sugar/glucose levels were checked and documented twice a day, but that he feels he should have had access to checking his blood sugar/glucose levels up to eight time per day. However, once again, mere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1334. At best, Plaintiff's contentions that he did not receive sufficient finger-sticks to adequately monitor and control his diabetes might amount to negligence. However, once again, mere "indifference," "negligence," or "medical malpractice" will not support a claim of deliberate indifference under the Eighth Amendment. Broughton, 622 F.2d at 460, citing Estelle, 429 U.S. at 105-06. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood, 900 F.2d at 1334.

Plaintiff fails to establish the absence of a triable issue of fact to meet his burden of proving that he did not receive a sufficient number of finger-sticks to adequately monitor and control his blood sugar/glucose levels, let alone that any Defendant(s) knew that he did not receive a sufficient number of finger-sticks and documentation to adequately monitor his blood sugar/glucose levels so as to pose a substantial risk of serious harm to Plaintiff, but disregarded that risk, or that there was a policy or practice attributable to any Defendant(s) of not providing finger-sticks as prescribed by a physician for diabetic inmates. Thus, Plaintiff is not entitled to summary judgment regarding his allegations of Defendants' deliberate indifference to his serious medical needs via the number of finger-sticks he received to monitor and control his blood sugar/glucose levels. The opposition to Plaintiff's motion need not be addressed on this point since Plaintiff has not met his burden to be entitled to summary judgment on this issue.

## 2. Defendants' Motion for Summary Judgment

### a. Deliberate Indifference

Corcoran, Divine, Martinez, Suryadevara, and Woodford argue, and each submits a declaration stating, that they "cannot be liable because they played no role in [Plaintiff's] dietary needs, dietary intake, blood sugar testing, or medical care." (Doc. 67, pg. 10, Doc. 68, pp. 2-4, 6.)[4]

Defendants submit evidence that from 2001 to 2007, S. Summersett, R.D. was the Departmental Food Administrator for CDCR and was responsible for creating CDCR's policy for inmate food services, including planning menus and ensuring the dietary and nutritional needs of all inmates in CDCR's prisons, including menus for inmates with special health care needs. (DUF[5] 23.) Since at least 1997, CDCR's policy has been to provide inmates with a "Heart Healthy" diet, which is restricted in sodium and fats, and is designed to meet the nutritional needs of normal, healthy adults and that inmates, such as diabetics, who can benefit from a medical diet, receive diet education to manage their meals responsibly. (DUF 24.) Diabetic inmates are educated about making food choices from the standard prison menu and diabetic inmates are counseled about the ramifications of non-compliance with the recommended dietary modifications parallel to recommendations and position of the ADA that what is healthy for diabetics is also healthy for anyone who wants to eat well. (DUF 25.) The daily menu served in CDCR contains approximately 400 calories more than the minimum amount required by the average, moderately active adult to maintain proper nutrition, such that diabetic inmates may discard foods they cannot eat and still receive an adequate amount of daily nutrition. (DUF 27.) The "Heart Healthy" diet is appropriate for and was implemented to improve the health of all inmates, including those with hypertension and diabetes and regularly offers food items which diabetic inmates can eat without adverse effects to their health. (DUF 26.) Diabetic inmates can obtain proper nourishment from the "Heart Healthy" diet without adverse health effects, but it is

---

[4] Defendants do not dispute that Plaintiff's diabetes qualifies as a serious medical need.

[5] See Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment (hereinafter "DUF") and supporting exhibits. (Doc. 68.)

the responsibility of diabetic inmates to make proper food choices; with proper choices, inmates such as Plaintiff can maintain proper health. (DUF 27.)

Further, Defendants submit evidence that, regardless of any self-avoidance education provided by prison staff, Plaintiff had, in his possession, information upon which to make educated dietary choices for his diabetic condition. To wit, in November 2004, Plaintiff filed an inmate grievance complaining that sweets such as syrup, cinnamon rolls, frosted flakes, and jelly were not appropriate for him to eat because they are high in sugar. (DUF 45 and Doc. 51, pg. 273.) In the grievance, Plaintiff referred to an article from Life Extension Magazine titled "Novel Fiber Limits Sugar Absorption." (Id.) The fourth page of the article delineates basic dietary education necessary for Plaintiff to control his diabetes via selection of items from the general population menu at SATF. (Id.) This page recommends individuals with diabetes refrain from eating desserts and other sweets. (Id.) Moreover, the chart explains that other foods have a high glycemic load and therefore intake should be moderated, or reduced. In particular, the chart explains and compares the different carbohydrate effects of rice, potatoes, bread, cereal, pasta, fruits, and vegetables. (Id.)

### (1)    Corcoran

Corcoran submits evidence that, since 2001, he has been employed by the California Correctional Peace Officers Association and at all times relevant to this suit, he has not had any authority or control over any CDCR institutions (including SATF). (DUF 17.) Corcoran played no role in, and had no personal knowledge of, Plaintiff's dietary needs, dietary intake, blood sugar/glucose testing, or medical care. (DUF 18.) Corcoran played no role in the CDCR's policies regarding inmate food services, menu planning, or serving the "Heart Healthy" diet. (DUF 22.) Corcoran did not review any of Plaintiff's grievances; has never met, spoken to, received any correspondence from, or otherwise communicated with Plaintiff; and played no role in Plaintiff's CDCR incarceration. (DUFs 17-19.) Corcoran thus submits sufficient evidence to show that he was not aware of Plaintiff's diabetic condition, and could not have been deliberately indifferent thereto so as to be entitled to summary judgment.

While Plaintiff did not file an opposition to Defendants' Motion for Summary Judgment,

the documents considered in support of Plaintiff's Motion for Summary Judgment do not raise a triable issue of fact as to deliberate indifference to his serious medical needs by Corcoran. Plaintiff's only evidence against Corcoran are conclusions found in the allegations of his complaint that Corcoran and all the other defendants failed to provide him with "medically necessary fingersticks [sic] and insulin injections" (Doc. 1, pg. 9); "had the authority of setting policies, writing regulations, or giving orders, and therefore are liable even if they did not directly enforce them against the plaintiff" (Id., pg. 10); and failed to provide Plaintiff with a "therapeutic medical diets, multiple fingersticks [sic], and 'small amounts' of insulin throughout his daily activities" so as to subject Plaintiff to "gratuitous pain and suffering" unrelated to any penological interests (Id., pg. 21). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). Thus, Plaintiff fails to submit evidence sufficient to establish a triable issue of fact against Corcoran. Further, Defendants submit evidence that Plaintiff is suing Corcoran because he believes that Corcoran is a supervisor. (DUF 19.) Plaintiff cannot sue Corcoran purely based on his role as a supervisor. See Fayle, 607 F.2d at 862; Mosher, 589 F.2d at 441.

Plaintiff fails to establish a triable issue of fact: (1) that the policy of serving the "Heart Healthy" diet with diabetic self-avoidance education posed a risk of serious harm to his diabetic condition; (2) that Corcoran had any knowledge that the policy of serving the "Heart Healthy" diet with self-avoidance education was unconstitutional and failed to take preventative action; and/or (3) that Corcoran had anything to do with promulgating and/or implementing the policy of serving the "Heart Healthy" diet to diabetics with self-avoidance education. Plaintiff also fails to establish a triable issue of fact: (1) that the daily blood sugar/glucose level testing he received was medically insufficient; (2) that Corcoran had anything to do with determining the number of daily blood sugar/glucose level testing Plaintiff received; (3) that Corcoran knew Plaintiff was not receiving sufficient daily blood sugar/glucose level testing and failed to take preventative action; or (4) that Corcoran promulgated or implemented a policy that caused Plaintiff to receive a constitutionally deficient number of blood sugar/glucose testings each day. Hansen, 885 F.2d

1    at 646; <u>Taylor</u>, 880 F.2d at 1045.

2        Thus, Corcoran is entitled to summary judgment.

3                    **(2)    Divine**

4        Divine submits evidence that she has been a registered nurse since 1989 and was

5    employed as a registered nurse at SATF by the CDCR from October of 2003 to February of 2005.

6    (DUF 14.)  Divine played no role in, and had no personal knowledge of, Plaintiff's dietary needs,

7    dietary intake, blood sugar/glucose testing, or medical care.  (DUF 15.)  Divine did not play a

8    role in the CDCR's policies regarding inmate food services, menu planning, or serving the

9    "Heart Healthy" diet.  (DUF 22.)  Divine is not aware of any facts which indicate Plaintiff's

10   dietary needs were not satisfied by the "Heart Healthy" diet.  (<u>Id.</u>)  As a nurse, Divine does not

11   have the authority to change or modify CDCR's "Heart Healthy" diet or prescribe a medical diet,

12   medical care, or medication to an inmate.  (DUF 15.)  Divine never refused to provide medical

13   care or treatment to Plaintiff.  (Doc. 68, Ex. J., Declaration of M. Divine ¶ 7.)  Divine has never

14   knowingly, or intentionally caused Plaintiff any pain, suffering, or injury of any kind.  (<u>Id.</u>)

15   Divine is not aware of anyone who refused to provide medical care/treatment or dietary

16   education to Plaintiff, nor does she have any reason to believe Plaintiff did not receive adequate

17   medical care at SATF.  (<u>Id.</u> at ¶¶ 8-9.)  This evidence is sufficient to show that Divine was not

18   aware of Plaintiff's diabetic condition, and was not deliberately indifferent thereto so as to be

19   entitled to summary judgment.

20       Plaintiff presents only one piece of evidence against Divine – that she signed as

21   approving Dr. Kyle's denial of one of Plaintiff's inmate appeals/grievances requesting a

22   therapeutic diabetic diet.  (Doc. 51, pp. 2, 3, 19-21.)  Approval by a registered nurse, in an

23   administrative position, of a doctor's review of a prisoner's grievance on medical issues does not

24   show deliberate indifference to his serious medical needs so as to raise a triable issue of material

25   fact.  Plaintiff fails to submit any evidence to suggest that Divine might have been able to

26   override Dr. Kyle's denial of one of Plaintiff's inmate appeals/grievances requesting a

27   therapeutic diabetic diet.  Further, Defendants submit evidence that Plaintiff is suing Divine

28   because he believes that Divine was a supervisor.  (DUF 16 and Ex. L 241:23-242:5.)  Plaintiff

cannot sue Divine purely based on her role as a supervisor.  See Fayle, 607 F.2d at 862; Mosher, 589 F.2d at 441.

Plaintiff fails to establish a triable issue of fact: (1) that the policy of serving the "Heart Healthy" diet with diabetic self-avoidance education posed a risk of serious harm to his diabetic condition; (2) that Divine had any knowledge that the policy of serving the "Heart Healthy" diet with self-avoidance education was unconstitutional and failed to take preventative action; and/or (3) that Divine had anything to do with promulgating and/or implementing the policy of serving the "Heart Healthy" diet to diabetics with self-avoidance education.  Plaintiff also fails to establish a triable issue of fact: (1) that the daily blood sugar/glucose level testing he received was medically insufficient; (2) that Divine had anything to do with determining the number of daily blood sugar/glucose level testing Plaintiff received; (3) that Divine knew Plaintiff was not receiving sufficient daily blood sugar/glucose level testing and failed to act; or (4) that Divine promulgated or implemented a policy that caused Plaintiff to receive a constitutionally deficient number of blood sugar/glucose testings each day.  Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045.

Further, Divine presents evidence that she literally had no involvement in Plaintiff's diabetic issues, or any other issues related to Plaintiff's confinement aside from the one inmate appeal/grievance that she signed approving Dr. Kyle's review and ruling of Plaintiff's request to be served a diabetic diet – which does not establish that she was deliberately indifferent to Plaintiff's diabetic condition.  Thus, Plaintiff fails to establish a triable issue of fact as to Divine being deliberately indifferent to his serious medical needs.

Accordingly, Divine is entitled to summary judgment.

### (3)   Martinez

Martinez submits evidence that, since April of 2004, she has been employed by SATF as the Correctional Health Services Administrator, which is an administrative position.  (DUF 9.) Martinez is not a health care provider, licensed to practice medicine, or authorized or licensed to provide, prescribe, or change medical treatment or medication, nor can she order a physician to prescribe or not to prescribe a course of treatment or medication.  (DUF 9.)  Martinez was not

involved in the development, authorization, review, or application of CDCR's policies regarding inmate food services, menu planning, or serving the "Hearth Healthy" diet with self-avoidance education. (DUFs 10, 22.) Martinez has no reason to believe the CDCR's "Heart Healthy" diet is inappropriate for inmates with hypertension and/or diabetes. (Doc. 68, Ex. H, Declaration of G. Martinez, ¶ 6.) Martinez did not play a role in Plaintiff's dietary needs, dietary education, dietary intake, or blood sugar/glucose testing. (DUF 10.) Martinez reviewed staff responses to inmate grievances filed by Plaintiff at SATF, but the scope of her review was limited to determining whether Plaintiff received adequate due process and she was not required to review Plaintiff's grievances to assess the veracity of his allegations or the quality of his medical care. (DUF 10.) Martinez has never knowingly, or intentionally caused Plaintiff any pain, suffering or injury of any kind. (Doc. 68, Ex. H, ¶ 9.) Martinez thus submits sufficient evidence to show that she was not aware of Plaintiff's diabetic condition, and could not have been deliberately indifferent thereto, so as to be entitled to summary judgment.

The documents considered in support of Plaintiff's Motion for Summary Judgment do not raise a triable issue of fact as to deliberate indifference to his serious medical needs by Martinez. Plaintiff's only evidence against Martinez are conclusions found in the allegations of his complaint that Martinez and the other defendants failed to provide him with "medically necessary fingersticks [sic] and insulin injections" (Doc. 1, pg. 9); "had the authority of setting policies, writing regulations, or giving orders, and therefore are liable even if they did not directly enforce them against the plaintiff" (Id., pg. 10); and failed to provide Plaintiff with "therapeutic medical diets, multiple fingersticks [sic], and 'small amounts' of insulin throughout his daily activities" so as to subject Plaintiff to "gratuitous pain and suffering" unrelated to any penological interests (Id., pg. 21). These conclusions are not sufficient to establish a genuine issue of material fact against Martinez. Further, Plaintiff cannot sue Martinez purely based on her role as a supervisor. See Fayle, 607 F.2d at 862; Mosher, 589 F.2d at 441.

Plaintiff fails to establish a triable issue of fact: (1) that the policy of serving the "Heart Healthy" diet with diabetic self-avoidance education posed a risk of serious harm to his diabetic condition; (2) that Martinez had any knowledge that the policy of serving the "Heart Healthy"

diet with self-avoidance education was unconstitutional and failed to take preventative action; and/or (3) that Martinez had anything to do with promulgating and/or implementing the policy of serving the "Heart Healthy" diet to diabetics with self-avoidance education. Plaintiff also fails to establish a triable issue of fact: (1) that the daily blood sugar/glucose level testing he received was medically insufficient; (2) that Martinez had anything to do with determining the number of daily blood sugar/glucose level testing Plaintiff received; (3) that Martinez knew Plaintiff was not receiving sufficient daily blood sugar/glucose level testing and failed to take preventative action; or (4) that Martinez promulgated or implemented a policy that caused Plaintiff to receive a constitutionally deficient number of blood sugar/glucose testings each day. Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045.

Further, as the Correctional Health Services Administrator, Martinez reviewed staff responses to inmate grievances filed by Plaintiff at SATF. The scope of her review was limited to determining whether Plaintiff received adequate due process. Martinez's duties did not require her to review Plaintiff grievances to assess the veracity of his allegations or the quality of his medical care. (DUF 10.) Plaintiff fails to submit any evidence to prove that Martinez had any medical training so as to hold her to the deliberate indifference standard in reviewing Plaintiff's medical inmate appeals/grievances. Greeno, 414 F.3d at 656 citing Spruill, 372 F.3d at 236. Plaintiff fails to establish a triable issue of fact as to Martinez's involvement in processing and/or reviewing Plaintiff's medical inmate appeals/grievances.

Plaintiff fails to establish the existence of a triable issue of material fact. Thus, Martinez is entitled to summary judgment.

### (4) Woodford

Woodford submits evidence that from 1978 to February of 2004, she worked for CDCR at California State Prison San Quentin, in San Quentin, California, during which time she had no authority of control over SATF, California State Prison Corcoran, Avenal State Prison, or Plaintiff, and from February 2004 to July 5, 2006, she was the Director of CDCR. (DUF 6.) Further, Woodford held the position of Under Secretary of CDCR for one day, July 5, 2006, and as CDCR Director and Under Secretary, she was responsible for overseeing management and

control of the state's correctional system, and managing a staff of over 50,000. (Doc. 68, Ex. G., Declaration of J. Woodford ¶ 3.) Woodford retired from CDCR, and relinquished all authority and control, on July 5, 2006. (DUF 6.) Woodford had no reason to believe CDCR's "Heart Healthy" diet was inappropriate for inmates with hypertension and/or diabetes. (DUF 6.) When she was CDCR Director and Under Secretary, Woodford was not involved in the development, authorization, or review of CDCR's policies regarding inmates food services, menu planning, or the "Heart Healthy" diet. (DUF 22.) Woodford does not have any personal knowledge of, and was not involved in Plaintiff's dietary needs, dietary intake, blood sugar/glucose testing, and medical care; did not review any of Plaintiff's grievances; and has not met, spoken to, received any correspondence from, or otherwise communicated with Plaintiff. (DUF 8.) Woodford thus submits sufficient evidence to show that she was not aware of Plaintiff's diabetic condition, and could not have been deliberately indifferent thereto so as to be entitled to summary judgment.

The documents considered in support of Plaintiff's Motion for Summary Judgment, as discussed in detail under Plaintiff's motion against the Supervising Defendants, do not raise a triable issue of fact as to deliberate indifference to his serious medical needs by Woodford. Further, Defendants submit evidence that Plaintiff is suing Woodford because of her role as a supervisor. (DUF 7 and Ex. L 220:25-221:25.) Plaintiff cannot sue Woodford purely based on her role as a supervisor. See Fayle, 607 F.2d at 862; Mosher, 589 F.2d at 441.

Plaintiff fails to establish a triable issue of fact: (1) that the policy of serving the "Heart Healthy" diet with diabetic self-avoidance education posed a risk of serious harm to his diabetic condition; (2) that Woodford had any knowledge that the policy of serving the "Heart Healthy" diet with self-avoidance education was unconstitutional and failed to take preventative action; and/or (3) that Woodford had anything to do with promulgating and/or implementing the policy of serving the "Heart Healthy" diet to diabetics with self-avoidance education. Plaintiff also fails to establish a triable issue of fact: (1) that the daily blood sugar/glucose level testing he received was medically insufficient; (2) that Woodford had anything to do with determining the number of daily blood sugar/glucose level testing Plaintiff received; (3) that Woodford knew Plaintiff was not receiving sufficient daily blood sugar/glucose level testing and failed to take preventative

action; or (4) that Woodford promulgated or implemented a policy that caused Plaintiff to receive a constitutionally deficient number of blood sugar/glucose testings each day. Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045.

Further, Woodford presents evidence that she did not review any of Plaintiff's grievances, did not received any correspondence from or communicate with Plaintiff, and was unaware of Plaintiff's allegations prior to July of 2006. (DUF 8.) Plaintiff fails to submit any evidence to prove that Woodford had any medical training so as to hold her to the deliberate indifference standard in reviewing Plaintiff's medical inmate appeals/grievances. Greeno, 414 F.3d at 656 citing Spruill, 372 F.3d at 236. Plaintiff fails to establish any triable issues of fact as to Woodford's involvement in processing and/or reviewing Plaintiff's medical inmate appeals/grievances such that Woodford is entitled to summary judgment.

### (5)    Dr. Suryadevara

Dr. Suryadevara submits evidence that from June 14 to November 5, 2004, he was the Chief Medical Officer at SATF, and that other than those dates, he did not work and had no authority or control at SATF. (DUF 11.) Dr. Suryadevara is familiar with, and agrees with the determination that the "Heart Healthy" diet is appropriate for inmates who have hypertension and/or diabetes. (DUF 22.) Dr. Suryadevara does not have any personal knowledge of, and was not involved in Plaintiff's dietary needs, dietary intake, blood sugar/glucose testing, and/or medical care at SATF. (DUF 12.) Dr. Suryadevara has never refused to provide medical care and treatment to Plaintiff, and has never knowingly and intentionally caused him any pain, suffering, or injury of any kind, nor is he aware of anyone who refused to provide medical care/treatment, and/or dietary education to Plaintiff. (Doc. 68, Ex. I, Declaration of Dr. Suryadevara, ¶¶ 11-12.) Dr. Suryadevara opines that the medical treatment and other accommodations provided to Plaintiff for his diabetes were appropriate for his medical condition. (Id. at ¶ 13.) While Dr. Sruydevara reviewed staff responses to Plaintiff's grievances, his review was limited to determining whether Plaintiff received adequate due process and was not required to review the veracity of his allegations or the quality of his medical care. (DUF 12.) The Court does not accept that Dr. Suryadevara's reviews of Plaintiff's medical grievances are restricted to purely

due process issues. Rather, taken in a light most favorable to Plaintiff, since Dr. Suryadevara was a medical doctor, and in fact the Chief Medical Officer at the time in question, he would have been placed on notice of medical issues via review of Plaintiff's medical grievances. See Jett, 439 F.3d 1091. Dr. Suryadevara thus fails to submit sufficient evidence to show that he was not aware of Plaintiff's diabetic condition.

The question then becomes whether Dr. Suryadevara acted with deliberate indifference towards Plaintiff's diabetic needs. Dr. Suryadevara submits evidence to show that he is familiar with, and agrees with the determination that the "Heart Healthy" diet is appropriate for inmates who have hypertension and/or diabetes; he is not aware of anyone who refused to provide medical care and/or treatment, and/or dietary education to Plaintiff; and he opines that the medical treatment and other accommodations provided to Plaintiff for his diabetes were appropriate for his medical condition. Dr. Suryadevara shows that he was not deliberately indifferent to Plaintiff's diabetic condition. While Plaintiff did not file an opposition to Defendants' Motion for Summary Judgment the documents previously considered in support of Plaintiff's Motion for Summary Judgment do not raise a triable issue of fact as to deliberate indifference to his serious medical needs by Dr. Suryadevara.

Further, Plaintiff is suing Dr. Suryadevara based upon his role as a supervisor. (DUF 13 and Ex. L 241:16-22.) Plaintiff cannot sue Dr. Suryadevara purely based on his role as a supervisor. See Fayle, 607 F.2d at 862; Mosher, 589 F.2d at 441. To the extent that Dr. Suryadevara is being pursued based on his status as a supervisor, Plaintiff fails to show that the "Heart Healthy" diet with self-avoidance education posed a risk to his diabetic condition, that he was harmed by this policy, and/or that Dr. Suryadevara promulgated and/or implemented that policy out of deliberate indifference to Plaintiff's medical condition. Plaintiff also failed to meet his burden to raise a triable issue of material fact showing that Dr. Suryadevara promulgated or implemented a policy that Plaintiff, as a diabetic inmate, would be unable to obtain the number of glucose finger-sticks that were medically required for his condition so as to rise to the level of deliberate indifference to his serious medical needs. Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045. Thus, Dr. Suryadevara is entitled to summary judgment.

### (6)    Dr. Kyle

Dr. Kyle submits evidence that he was directly involved in Plaintiff's medical care and treatment; that while at SATF, Plaintiff's blood sugar/glucose was tested twice a day, and he received regular insulin shots and sliding scale insulin as needed to control his blood sugar/glucose – which was appropriate for Plaintiff's diabetes.  (DUFs 73, 76.)  Dr. Kyle never had any control over CDCR's "Heart Healthy" diet, but to the best of his knowledge, it is appropriate for inmates who have diabetes and the ADA's dietary guidelines generally call for a low-fat, low-sugar diet, with moderate protein and a high proportion of complex carbohydrates. (DUF 33.)  Plaintiff's medical records indicate that he was counseled by prison staff both about making food choices from the standard prison menu (such as avoiding high sugar items), and the health ramifications of non-compliance with the recommended dietary modifications.  (DUF 34.) Between February 2004 and June 2005, Dr. Kyle regularly examined and treated Plaintiff, renewed Plaintiff's medications with exam and without examination after reviewing his records to assess his medical condition and evaluate if any changes in treatment were necessary, and either examined Plaintiff, or reviewed his medical chart, at least once a month.  (DUFs 33, 76, 79-85.)  Dr. Kyle responded to Plaintiff's grievances regarding his diet and medical treatment at SATF in February and September of 2004, and February and March of 2005 and assessed the veracity of his allegations.  (Doc. 68, Ex. C, Declaration of Dr. Kyle, ¶ 11.)  In Dr. Kyle's professional opinion, Plaintiff received reasonable and appropriate treatment and accommodations for his diabetes at SATF and did not suffer any injury as a result thereof.  (Id. at ¶ 12.)  Dr. Kyle never intentionally or knowingly caused Plaintiff any pain, suffering, injury, or harm.  (DUF 87.)  Dr. Kyle is not aware of anyone who refused to provide medical care and treatment, or dietary education to Plaintiff.  (DUF 87.)  Dr. Kyle's adjusting of treatment after examination of Plaintiff and/or his medical records at least once a month coupled with his understanding that CDCR's "Heart Healthy" diet was appropriate under the ADA's dietary guidelines, that Plaintiff had been counseled as to appropriate food choices and ramifications of non-compliance and his opinion that Plaintiff received a reasonable and appropriate course of treatment and other accommodations for his diabetes at SATF meet his burden to be entitled to

1    summary judgment.

2         The documents considered in support of Plaintiff's Motion for Summary Judgment do not

3    raise a triable issue of fact as to deliberate indifference to his serious medical needs by Dr. Kyle.

4    To wit, Plaintiff's allegations that Dr. Kyle advised him that therapeutic and/or special diets were

5    unavailable, but that he would refer Plaintiff to be seen by SATF's dietician are insufficient to

6    raise a triable issue of material fact to defeat Dr. Kyle's Motion for Summary Judgment just as

7    they were found to be insufficient to prove the absence of a triable issue of material fact to entitle

8    Plaintiff to summary judgment.  Further, Plaintiff's evidence shows that he received two finger

9    sticks the vast majority of days, fails to show that his blood sugar/glucose levels were out of

10   control, or any medical necessity for his blood sugar/glucose levels to be checked more

11   frequently, and fails to show any expert testimony to support any harm that may have been

12   caused by his inability to have his blood sugar/glucose levels checked more frequently.

13        Further, Plaintiff fails to establish a triable issue of fact: (1) that the policy of serving the

14   "Heart Healthy" diet with diabetic self-avoidance education posed a risk of serious harm to his

15   diabetic condition; (2) that Dr. Kyle had any knowledge that the policy of serving the "Heart

16   Healthy" diet with self-avoidance education was unconstitutional and failed to take preventative

17   action; and/or (3) that Dr. Kyle had anything to do with promulgating and/or implementing the

18   policy of serving the "Heart Healthy" diet to diabetics with self-avoidance education.  Plaintiff

19   also fails to establish a triable issue of fact: (1) that the daily blood sugar/glucose level testing he

20   received was medically insufficient; (2) that Dr. Kyle knew Plaintiff was not receiving sufficient

21   daily blood sugar/glucose level testing and failed to take preventative action; or (3) that Dr. Kyle

22   promulgated or implemented a policy that caused Plaintiff to receive a constitutionally deficient

23   number of blood sugar/glucose testings each day.  Hansen, 885 F.2d at 646; Taylor, 880 F.2d at

24   1045.  Thus, Dr. Kyle is entitled to summary judgment.

25                              (7)    Dr. Wu

26        Dr. Wu submits evidence that, since January of 2003, he has been employed by the

27   CDCR at SATF as a physician and surgeon and he was directly involved in Plaintiff's medical

28   care and treatment between July 2003 and February 2004.  (Doc. 68, Ex. B, Declaration of S.

                                        33

Wu, M.D. ¶¶ 1, 6.) While at SATF, Plaintiff's blood sugar/glucose was tested twice a day, and he received regular insulin shots and sliding scale insulin anytime his blood sugar/glucose was above 200 mg/dcl, which Dr. Wu opines was appropriate for Plaintiff's diabetes. (DUF 73, 75-76.) Dr. Wu never had any control over CDCR's "Heart Healthy" diet, but to the best of his knowledge, it is appropriate for inmates who have diabetes and parallels the ADA's dietary guidelines which generally call for a low-fat, low-sugar diet, with moderate protein and a high proportion of complex carbohydrates. (DUF 33.) Plaintiff's medical records indicate that he was counseled by prison staff both about making food choices from the standard prison menu (such as avoiding high sugar items), and the health ramifications of non-compliance with the recommended dietary modifications. (DUF 34.) Between July 2003 and February 2004, Dr. Wu regularly examined and treated Plaintiff, renewed Plaintiff's medications either with examination or without examination after reviewing his records to assess his medical condition and evaluate if any changes in treatment were necessary, and either examined Plaintiff or reviewed his medical chart at least once a month. (DUF 78.) In Dr. Wu's professional opinion, Plaintiff received a reasonable and appropriate course of treatment and other accommodations for his diabetes at SATF and did not suffer any injury as a result of the medical treatment and other accommodations he received at SATF. (Doc. 6, Ex. B, ¶ 8.) Dr. Wu never intentionally or knowingly caused Plaintiff any pain, suffering, injury, or harm. (DUF 86.) Dr. Wu is not aware of anyone who refused to provide medical care and treatment, or dietary education to Plaintiff. (DUF 86.) Dr. Wu's adjusting of treatment after examination of Plaintiff and/or his medical records at least once a month coupled with his understanding that CDCR's "Heart Healthy" diet was appropriate under the ADA's dietary guidelines and that Plaintiff had been counseled as to appropriate food choices and ramifications of non-compliance, and his opinion that Plaintiff received a reasonable and appropriate course of treatment and other accommodations for his diabetes at SATF meet Dr. Wu's burden to be entitled to summary judgment.

The documents considered in support of Plaintiff's Motion for Summary Judgment do not raise a triable issue of fact as to deliberate indifference to his serious medical needs by Dr. Wu. To wit, Plaintiff's allegations that Dr. Wu failed to "allow" him any diabetic education with a

34

dietician are insufficient to raise a triable issue of material fact to defeat Dr. Wu's Motion for Summary Judgment just as they are insufficient to prove the absence of a triable issue of material fact to entitle Plaintiff to summary judgment. Further, Plaintiff's evidence shows that he received two finger sticks the vast majority of days, and fails to show that his blood sugar/glucose levels were out of control, or any medical necessity for his blood sugar/glucose levels to be checked more frequently, and Plaintiff failed to submit medical evidence to show any harm that may have been caused by his inability to have his blood sugar/glucose levels checked more frequently. Thus, Dr. Wu is entitled to summary judgment.

### (8) Brooks

Brooks submits evidence that Brooks has worked as a dietician for approximately ten years, that from January 2004 to October 2005 Brooks was employed by CDCR at SATF, and currently works as a dietician at Pleasant Valley State Prison in Coaling, California. (DUF.) Brooks did not have any control over the CDCR's "Heart Healthy" diet, but to the best of Brooks' knowledge, it is appropriate for inmates who have diabetes and conforms with the dietary guidelines of the ADA for low-fat, low-sugar diet, with moderate protein and a high proportion of complex carbohydrates. (DUFs 22-26.) Brooks' duties at SATF involved educating, counseling, and answering questions from inmates, correctional staff, and medical personnel regarding the dietary needs of inmates. (Doc. 68, Ex. E, Declaration of M Brooks, ¶ 4.) Brooks also prepared individual dietary menus for inmates who required therapeutic medical diets. (Id.) During Brooks' employment at SATF, Brooks was familiar with Plaintiff's medical diagnosis of diabetes and his nutritional needs. (Id.) Plaintiff has type two diabetes. In Brooks' professional opinion, Plaintiff did not require a therapeutic medical diet to adequately control his diabetes. (Id.) CDCR's "Heart Healthy" diet was appropriate for Plaintiff. (Id.) Brooks met with Plaintiff on at least two occasions to discuss his diabetes, during which time Brooks educated Plaintiff as to how to make food choices from the standard prison menu and the ramifications of non-compliance with the recommended dietary modifications, and that the reading of his blood sugar/glucose levels before breakfast and dinner would affect the types and portions of foods he should eat. (DUF 34.) Brooks' primary focus was to ensure that Plaintiff

stop eating sweets and other items high in sugar or, at the very least, strictly regulate these foods based upon his blood sugar/glucose readings. (Doc. 68, Ex. E, ¶ 5.) Brooks also explained to Plaintiff which food groups from the menu were high in carbohydrates and therefore should be moderated or reduced based upon his blood sugar/glucose readings, and since he was overweight, Plaintiff should exercise as much as possible -- which would also lower his blood sugar/glucose levels. (Id.) During these meetings, Brooks provided Plaintiff with hand-outs that summarized the information they discussed. (Id.) During a meeting with Brooks, Plaintiff requested the prison provide him with a "diabetic menu," but there is not a "one-size-fits-all" diabetic menu as the dietary needs of a diabetic inmate depend upon a number of factors (including but not limited to: (1) whether the inmate had type one or type two diabetes; (2) the degree of the inmate's diabetes; (3) the height and weight of each inmate; and (4) the number of calories the inmate used each day) and a diabetic inmate's diet might need to be changed based upon the results of his blood sugar/glucose tests. (DUF 31.) Plaintiff's request for a "diabetic menu" was in essence a request for three individual menus from SATF. (Id.) Plaintiff was not provided with a diabetic menu, rather Brooks provided him with education and handouts regarding how to make informed choices from the menu at SATF. (Id.) The information provided to Plaintiff at SATF was sufficient for Plaintiff to manage his meals responsibly. (DUF 35.) At no time did Brooks intentionally or knowingly cause Plaintiff any pain, suffering, injury or, harm, nor is Brooks aware of anyone who refused to provide medical care/treatment or dietary education to Plaintiff. (Doc. 68, Ex. E, ¶ 13.) Brooks' involvement in educating Plaintiff as to which dietary choices he should make on the "Heart Healthy" diet, based on his blood sugar/glucose levels and the ramifications of non-compliance coupled with the understanding that CDCR's "Heart Healthy" diet was appropriate under the ADA's dietary guidelines, and Brooks' opinion that Plaintiff's medical condition did not require a therapeutic medical diet meet Brooks' burden to be entitled to summary judgment.

The documents considered in support of Plaintiff's Motion for Summary Judgment do not raise a triable issue of fact as to deliberate indifference to his serious medical needs by Brooks. Plaintiff's allegations that Brooks failed and/or was unable to provide him with a diabetic diet

and/or diabetic menus does not establish a triable issue of material fact – particularly given that SATF's policy of serving the "Heart Healthy" diet with self-avoidance education to diabetics is not a constitutionally deficient policy.  Further, Plaintiff fails to establish a triable issue of fact: (1) that the policy of serving the "Heart Healthy" diet with diabetic self-avoidance education posed a risk of serious harm to his diabetic condition; (2) that Brooks had any knowledge that the policy of serving the "Heart Healthy" diet with self-avoidance education was unconstitutional and failed to take preventative action; and/or (3) that Brooks had anything to do with promulgating and/or implementing the policy of serving the "Heart Healthy" diet to diabetics with self-avoidance education.  Plaintiff also fails to establish a triable issue of fact: (1) that the daily blood sugar/glucose level testing he received was medically insufficient; (2) that Brooks had anything to do with determining the number of daily blood sugar/glucose level testing Plaintiff received; (3) that Brooks knew Plaintiff was not receiving sufficient daily blood sugar/glucose level testing and failed to take preventative action; or (4) that Brooks promulgated or implemented a policy that caused Plaintiff to receive a constitutionally deficient number of blood sugar/glucose testings each day.  Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045.  Thus, Brooks is entitled to summary judgment.

As previously discussed, Plaintiff's allegation that he did not receive diabetic education as to which foods to avoid and/or the dangers of non-compliance at most rise to the level of negligence, but mere "indifference," "negligence," or "medical malpractice" will not support a claim of deliberate indifference under the Eighth Amendment.  Broughton, 622 F.2d at 460, citing Estelle, 429 U.S. at 105-06.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood, 900 F.2d at 1334.  Thus, Plaintiff's allegations and evidence that he did not receive diabetic self-avoidance education as to which foods to avoid from the "Heart Healthy" diet, even taken in the light most favorable to Plaintiff, do not rise to the level of a constitutional violation so as to present a triable issue of material fact to defeat Defendants' Motion for Summary Judgment.

**b.      Causation of Injury and/or Harm to Plaintiff**

Defendants argue that, even if Plaintiff were able to establish deliberate indifference to

37

his diabetic condition, they are entitled to summary judgment because any alleged denial/delay of the medical provisions which Plaintiff seeks did not cause Plaintiff's injuries and/or damages. (Doc. 67, pp. 13-14.)

A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978). "Causation is, of course, a required element of a § 1983 claim." Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir.1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) (citing Rizzo v. Goode, 423 U.S. 362, 370-71(1976)); Berg v. Kincheloe, 794 F.2d 457, 460 (9th Cir.1986). Plaintiff must establish personal acts by each defendant which show a direct causal connection to the constitutional violation at issue. See Sanders v. Kennedy, 794 F.2d 478, 483 (9th Cir.1986). If there is no affirmative link between a defendant's conduct and the alleged injury, there is no deprivation of the plaintiff's constitutional rights. Rizzo, 423 U.S. at 370. Further, mere delay of medical care and/or treatment, which did not cause harm, is insufficient to state a claim of deliberate medical indifference, and Plaintiff will "have no claim for deliberate medical indifference unless the denial was harmful." Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (per curiam) citing Estelle, 429 U.S. at 106.

Defendants submit evidence that they did not cause Plaintiff any injury. (DUFs 89-100.) Plaintiff's high blood sugar/glucose levels at SATF were caused by his own failure to comply with the medical, exercise, and dietary instructions provided to him combined with his decision to supplement the menu at SATF with candy. (DUFs 38, 40, 100.) Plaintiff received education on dietary self-avoidance and ramifications of non-compliance from prison personnel and possessed information upon which to make educated dietary decisions. (DUF 45 and Ex. E ¶¶ 4-8.) Plaintiff did not suffer any injury as a result of the medical treatment and other accommodations provided to Plaintiff with respect to his diabetes at SATF. (DUFs 89-91, 93-96,

38

100.) Diabetes can cause neuropathy, blurred vision, and kidney damage. (DUF 92.) However, Plaintiff had neuropathy prior to arriving at SATF, which was not exacerbated by his medical care, diet, or blood sugar/glucose levels at SATF. Plaintiff's neuropathy worsened, and he lost motor function in his lower extremities because he failed to comply with doctors' orders and other recommendations to exercise and instead chose to overused his wheelchair. (DUF 95-96.) Plaintiff did not suffer any damage to his kidneys or eyes. (DUF 93-94.) Defendants' have thus met their burden of production establishing that they did not cause Plaintiff's injuries and/or damages.

The burden shifts to Plaintiff to submit evidence that Defendants' caused his injuries and/or damages. Plaintiff appears to argue that his blood sugar/glucose levels were allowed to be out of control because they were not checked and documented more often, and because he was not given a diabetic diet and/or a diabetic menu and/or self-avoidance education. As a result, Plaintiff submits that he was caused "harm" (Doc. 51, pg. 3, ¶ 4, pg. 4, ¶ 8); "daily sickness" (Id., pg. 2, ¶ 4, pg. 4, ¶ 9); "irreversible harm" (Id., pg. 2, ¶ 8); "unnecessary pain, discomfort and intentional infliction of emotional distress" (Id., pg. 4, ¶ 14.); "irreparable harm, pain and suffering, and emotional distress" (Doc. 1, pg. 9, ¶ 7); "daily with potentially fatal symptoms of diabetes" (Id., pg. 12); "dizziness and pain" (Id., pg. 13); and "daily with numbness in his legs and feet" (Id.). These conclusions are insufficient as they are set forth without any supporting factual basis, and without the benefit of medical expertise on causation. Fed. R. Evid. 701 & 702. Further, Plaintiff fails to show how the failure to check and document his blood sugar/glucose levels more frequently and the alleged unavailability of a diabetic diet, diabetic menus, and/or self-avoidance education could have caused his vague symptoms.

Plaintiff does not have any medical training, and Defendants object to a number of Plaintiff's statements of undisputed fact on this basis. (DUF 2, and Ex. L 132:16-19.) Plaintiff is not qualified to render medical opinions as to the cause of his injuries and/or damages. (Fed. R. Evid. 701-702.) Defendants' objections to Plaintiff rendering medical opinions and/or conclusions are sustained.

Defendants have met their burden of establishing that they did not cause Plaintiff's

injuries and/or damages.  Plaintiff's evidence fails to establish a triable issue of material fact as to the causation of his injuries.  Thus, Defendants are entitled to summary judgment on this issue.

## B.  Tort Claims Under California Law

### 1.  Plaintiff's Motion for Summary Judgment

#### a.  California Tort Claims Act

Plaintiff's contentions as to his claims under California tort law are, in their entirety, that he "states claims for medical malpractice, professional negligence and intentional infliction of emotional distress.  Plaintiff claims that Defendants failed to summon adequate medical care and treatment for his diabetic diets (breakfast, lunch, and dinner), and numerous daily finger-sticks which is necessary to monitor and control his diabetes that resulted in irreparable harm to the plaintiff."  (Doc. 51, pg. 13.)

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006).  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act.  State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff alleges and presents evidence to establish that he complied with California's Tort Claims Act.  (Doc. 1, pg. 28, and Ex.s E and F.)  However, just meeting this filing requirement, does not entitle Plaintiff to summary judgment.  To be entitled to summary judgment, Plaintiff must meet his burden as to each element of his claims under applicable California law.

#### b.  Medical Malpractice/Professional Negligence

Plaintiff claims that Defendants violated California tort law for medical

malpractice/professional negligence by failing "to summon adequate medical care and treatment for his diabetes which include daily diabetic diets (breakfast, lunch, and dinner), and numerous daily finger-sticks which is necessary to monitor and control his diabetes that resulted in irreparable harm to the plaintiff." (Doc. 51, pg. 13.)

To establish medical negligence, a plaintiff must prove all of the following: (1) that the defendant was negligent; (2) that the plaintiff was harmed; and that the defendant's negligence was a substantial factor in causing the plaintiff's harm. Ladd v. County of San Mateo (1996) 12 Cal.4th 913, 917; Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 673; Restatement Second of Torts, section 328A; and Judicial Council Of California Civil Jury Instruction 400, Summer 2008 Supplement Instruction.

Medical professionals are negligent if they fail to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professionals would use in the same or similar circumstances. This level of skill, knowledge, and care is sometimes referred to as "the standard of care." Landeros v. Flood 17 Cal.3d 399, 408 (1976); see also Brown v. Colm 11 Cal.3d 639, 642–643 (1974); Mann v. Cracchiolo (1985) 38 Cal.3d 18, 36; and Judicial Council Of California Civil Jury Instruction 500, Summer 2008 Supplement Instruction.

"[M]edical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances." Hutchinson v. United States, 838 F.2d 390, 392-93 (9th Cir. 1988) (internal citations omitted). "[The] standard of care, which is the basic issue in malpractice actions, can be proven only by expert testimony." Hutchinson, 838 F.2d at 392.[6]

Plaintiff fails to submit any expert witness declarations to address the elements of the applicable standard(s) of care, breach thereof, damages, and causation. Plaintiff's opinions that he was not provided with an appropriate diet and/or education thereon for diabetics and sufficient finger-sticks to monitor his blood sugar/glucose levels are based on scientific, technical, or other

---

[6] Plaintiff cites Jackson v. Fauver, 334 F.Supp.2d at 741 in support of his contention that the defendants' actions amounted to medical malpractice/professional negligence. However, the pin cite to Jackson, which Plaintiff references, merely addresses three scenarios of medical malpractice/professional negligence claims under New Jersey state law – which is not applicable to claims under California state law.

specialized knowledge within the scope of Federal Rule of Evidence 702. As stated previously, Plaintiff is not a medical expert. Thus, he is limited to providing testimony that is rationally based on his own perceptions. Fed. R. Evid. 701. Plaintiff argues that he suffered increased symptoms such as blurred vision, dizziness, and physical and emotional pain. (Doc. 51, pg. 7.) While these perceptions of increased symptoms are allowable, none of these increased symptoms addresses the standard(s) of care or causation. Further, Plaintiff's argument that he suffered "possible kidney damage" is inadmissible as it is both speculative and requires medical testimony which he is not qualified to render. (Id.) Plaintiff's argument that he suffered neuropathy as a result of his uncontrolled diabetes requires a qualified medical opinion and is therefore also inadmissible.

Thus, Plaintiff is not entitled to summary judgment on his allegations that Defendants' actions amounted to medical malpractice/professional negligence. The opposition to Plaintiff's motion need not be addressed on this point since Plaintiff has not met his burden to be entitled to summary judgment on this issue.

### c.    Intentional Infliction of Emotional Distress (IIED)

Plaintiff also claims that Defendants violated California tort law for intentional infliction of emotional distress by failing "to summon adequate medical care and treatment for his diabetes which include daily diabetic diets (breakfast, lunch, and dinner), and numerous daily finger-sticks which is necessary to monitor and control his diabetes that resulted in irreparable harm to the plaintiff." (Doc. 51, pg. 13.)

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003) (citing to Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991)) (quotations omitted). In addition to the requirement that the conduct be intentional and outrageous, the conduct must have been directed at a plaintiff, or occur in the

presence of a plaintiff, of whom the defendant was aware. <u>Simo</u>, 322 F.3d at 622 (citing

<u>Christensen</u>, 54 Cal.3d at 903) (quotations omitted). A defendant's conduct must be "extreme

and outrageous" to be actionable under California law. <u>Sabow v. United States</u>, 93 F.3d 1445,

1454-55 (9th Cir. 1996) at 1455 citing to <u>Davidson v. Westminster</u>, 32 Cal.3d 197 (1982) (

"Conduct to be extreme and outrageous must be so extreme as to exceed all bounds of that

usually tolerated in a civilized community.").

Plaintiff's evidence on this issue is found in his brief in support of his motion for

summary judgment (as quoted above in this section), and exceedingly sparse allegations in his

complaint. Plaintiff fails to submit any evidence to show that Defendants' conduct was directed

at, or occurred in front of, Plaintiff with the intent, or in reckless disregard of the probability, of

causing emotional distress. Plaintiff also fails to show that the Defendants' conduct was so

extreme as to exceed all bounds of that usually tolerated in a civilized community. Further,

Plaintiff fails to submit any evidence that he actually suffered severe or extreme emotional

distress as a result of any actions, or inactions, by any Defendant(s).

Thus, Plaintiff is not entitled to summary judgment on his allegations that Defendants'

actions amounted to IIED. The opposition to Plaintiff's motion need not be addressed on this

point since Plaintiff has not met his burden to be entitled to summary judgment on this issue.

## 2.    Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's state law claims arguing that the

care and treatment Plaintiff received was reasonable and appropriate based on Plaintiff's medical

condition and that Defendants are not the proximate cause of Plaintiff's injuries. (Doc. 67, pp.

18-19.) Further, Defendants argue that if their Motion for Summary Judgment is granted,

Plaintiff's state law claims should be dismissed. (<u>Id.</u> pp. 19-20.)

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

action within such original jurisdiction that they form part of the same case or controversy under

Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under §

1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

discretionary." <u>Acri v. Varian Assoc.</u>, Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966).

Since, as discussed in detail above, Defendants are entitled to summary judgment such that Plaintiff's federal claims will be dismissed, Plaintiff's claims under state law should be dismissed as well.

### C. Damages – Declaratory Relief

In addition to money damages, Plaintiff seeks declaratory relief. "'A case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" <u>Feldman v. Bomar</u>, 518 F.3d 637, 642 (9th Cir. 2008) (quoting <u>Headwaters, Inc. v. Bureau of Land Management, Medford Dist.</u>, 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." <u>U.S. v. State of Wash.</u>, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted). The governmental conduct at issue in this action occurred from 2003 through 2005, and Plaintiff's remedy would be damages if he were able to prevail on his claim that his constitutional rights were violated. Yet, since Defendants are entitled to summary judgment, Plaintiff's declaratory relief claim is properly dismissed with the rest of this action.

### D. Defenses – Qualified Immunity

In their cross-motion and opposition to Plaintiff's Motion for Summary Judgment, Defendants contend that they are entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory

or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the first prong of inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). The second prong asks whether the right was clearly established such that a reasonable officer in those circumstances would have thought her or his conduct violated the alleged right. Id.; Inouye v. Kemna 504 F.3d 705, 712 n.6 (9th Cir. 2007). These prongs need not be addressed by the Court in any particular order. Pearson v. Callahan 129 S.Ct. 808 (2009). There are no triable issues of fact in the case at bar. Plaintiff's Motion for Summary Judgment should be denied and Defendants' Motion for Summary Judgment should be granted. Thus, the Court need not address whether Defendants are entitled to qualified immunity.

**VI.** **Conclusion**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1.      Plaintiff's Motion for Summary Judgment, filed April 20, 2007, be DENIED;

2.      Plaintiff's claim for declaratory relief be dismissed; and

2.      Defendants' Cross-Motion for Summary Judgment, filed February 1, 2008, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:      March 27, 2009**                              _____/s/ Sandra M. Snyder_____
                                                                        UNITED STATES MAGISTRATE JUDGE

45